**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------X
UNITED STATES OF AMERICA,


    -against-                                    07 Cr. 727 (HB)


HISHAM A. SALEH,
               *DEFENDANT.*
------------------------------X

### HISHAM SALEH'S MEMORANDUM OF LAW IN SUPPORT OF A NON-GUIDELINES SENTENCE UNDER BOOKER and 18 U.S.C. 3553 (a)


## PRELIMINARY STATEMENT

    Hisham Saleh stands before the Court to be sentenced for violations of 18 U.S.C. 922 (a) (1) (a) (Trafficking in Firearms); 26 U.S.C. 5861 (d) (Illegal Possession of a Sawed-off Shotgun); and 21 U.S.C. 846 (Conspiracy to Distribute and Possess with Intent to Distribute Narcotics).

    Mr. Saleh accepts the facts admitted and the Guideline calculations contained in the Department of Probations December 2007 Pre-Sentence Report. Nevertheless, he respectfully submits that a Guideline sentence between 51 to 63 months of imprisonment is "greater than necessary" to satisfy the factors contained in 18 U.S.C. § 3553 (a). Consequently, he asks that the Court impose a non-

Guidelines sentence in accordance with Booker, Crosby,
Kimbrough and 18 U.S.C. 3553 (a). Certainly, a non-
Guideline sentence of probation and time served would
properly reflect the § 3553 (a) considerations in this
case.

Mr. Saleh's extraordinary family circumstances, solid
employment record, contributions to family and community
and lack of criminal history all mitigate in favor of a
non-Guidelines sentence. What is more, the Supreme Court
has also specifically noted that in sentencing under the
now-advisory guidelines, a sentencing court may take into
account its view that the penalties for distributing crack
are excessive in relation to those for other similar drugs.
Kimbrough v. United States, 128 S.Ct. 558, 564 (2007).

Mr. Saleh was 28 years-old at the time of his arrest.
Before his arrest, his life was law-abiding and
unremarkable. He had been neither arrested, nor convicted
of any crime.  Here, the offense conduct did not involve
serious bodily injury or death. There are no allegations
that he discharged a firearm, or otherwise brandished a
firearm.  The offenses occurred during a criminal episode
of limited duration without significant planning, which
involved the sale of firearms and two sales of cocaine to a
confidential informant and represent a marked deviation by

him from an otherwise law-abiding life.  Indeed, both the
Government and the Department of Probation have found that
Mr. Saleh meets the criteria for the imposition of a
sentence without regard to any statutory minimum sentence.

When fashioning the appropriate sentence in this case
the Court should be guided by all of the factors set forth
in 18 U.S.C. § 3553 (a).  After all, the Second Circuit in
United States v. Jones found that after the entire
Guidelines scheme was rendered advisory by the Supreme
Court's decision in Booker, the Guidelines limitations on
the use of factors to permit departures are no more binding
on sentencing judges than the calculated Guidelines ranges
themselves.

The Court is still obligated to "consider" the
Guidelines, under 18 U.S.C. § 3553(a) (4), along with the
other relevant factors listed in § 3553 (a) including
consideration of the Commission's relevant policy
statements as well as the calculated Guidelines range. But
"consideration" does not mean mandatory adherence.
Recently, in Rita v. United States, the Supreme Court held
that a court of appeals may apply a presumption of
reasonableness to a district court sentence imposed within
a properly calculated Guideline range.  Critically,
however, the Court said that such a presumption does not

3

apply in the district court. There, a defendant may argue
for a non-Guidelines sentence (1) on the basis of
traditional departure grounds, (2) because the Guidelines
sentence itself fails properly to reflect § 3553 (a)
considerations, or (3) because a case warrants a different
sentence regardless.  In determining the merits of these
arguments, the sentencing court does not enjoy the benefit
of a legal presumption that the Guidelines sentence should
apply.  See also Gall v. United States, No. 06-7949, 128
S.Ct. 586, 597, 602 (2007).  As such, the Court is not
prohibited from including in that consideration its own
sense of what is a fair and just sentence under all the
circumstances. For the reasons set forth below, the Court
should, as it is empowered to do, impose a non-Guidelines
sentence of probation and thereby decline to imprison
Hisham Saleh for any amount of time that fails to
accomplish "individualized justice."

As the Court will learn in reading the letters
received on Hisham Saleh's behalf, he is a gentle and
loving husband and devoted father of four young children.
He is also the sole financial provider for his wife and
children whom depend alone on him for there daily bread.
His young life is also defined by hard work and dedication
to helping others. One cannot help but be moved by the

simple accounts, attached hereto but especially those of
his wife, Talah M. Atawalah, of the ways in which Hisham
Saleh has loved, sheltered and provided for their children.
His life story is a simple one in which he recently made
serious mistakes, but his character and self-respect
enabled him to face them. And one cannot help but note that
despite those mistakes, Hisham Saleh remains a decent
person, far from a remorseless criminal deserving a lengthy
period of incarceration.

     As a result of this conviction, his mother and father
believe that their son will be sent to prison.  His wife
believes that her children will be deprived of their father
during their formative years. His punishment and that of a
family has already been devastating and profound. The
further punishment that the "advisory" Guidelines seek is
neither fair nor balanced given Hisham Saleh's unique
individual circumstances when weighed against the facts of
this case. Nor is it necessary, given that the punishment
he and his family have suffered will certainly deter future
conduct by similarly situated individuals.

     But considering all of the facts, the offender as well
as the offense, the man as well as his conduct, there is no
reasonable social goal to be served by a 51 to 63 month
period of incarceration, only the further destruction of a

young man who has accepted responsibility for his misconduct and who will continue to pay his debt to society for years to come.  Hisham Saleh respectfully submits that the only fair and balanced disposition of this matter necessarily entails a non-Guidelines sentence of probation.

## PERSONAL BACKGROUND

### A. From Yemen to the Bronx

Hisham Saleh was born into a loving family 28 years ago in the Republic of Yemen. ("PSR" ¶¶ 70-75)[1]  He is one of 13 children from marriage of his father, Abdo Nagi Saleh and mother, Mofadala Mohamed Alzzubaidi.[2]  His early childhood years were spent living in Yemen. He later immigrated to the United States when he was ten-years old to join his mother, father and brothers in the Bronx.  Mr. Saleh became a United States citizen in 1991. ("PSR" ¶ 77) During this time, Hisham Saleh attended school, worked in his fathers small convenience and thrift stores and returned to Yemen, as a teenager, to care for his ailing grandfather during the remaining year of his grandfather's life. ("PSR" ¶ 76)

Although Hisham Saleh attended high school in the Bronx, he was not academically inclined.  He left high

---

[1] PRESENTENCE INVESTIGATION REPORT - AS AMENDED ON FEBRUARY 21, 2008 - (Docket No. 07 Cr. 727 (HB))
[2] EXHIBIT "B" 1

school following the tenth grade to fulfill his ambition of joining his father in the family businesses. ("PSR" ¶ 78) His mother and father returned to Yemen in 2001.

According to his mother and father, "Hisham was peaceful, philanthropic, and of very good conduct."[3] Further, they were "surprised" to learn of Hisham's arrest and attributed his conduct to his "weakness," "lack of willpower" and "the stress he endured."[4] Their letters respectfully ask the Court to be "merciful" at the time of sentencing and to consider his wife and children that need him.[5]

According to Mr. Saleh's brother Mohammad Saleh, when their parents learned that Hisham had been arrested and would likely go to prison; "they were crushed; his mother refuses to accept the truth, and his father is greatly ashamed." ("PSR" ¶ 74) Mohammad Saleh attributed his parent's devastation and shame to the differences between Arabian and American culture. "In Yemen word gets around, and people judge entire families based on one problem child." (Id.) Dr. Hamud Al-silwi, Imam, also believes that Mr. Saleh's arrest "will truly affect the entire family in

---

[3] EXHIBIT "B" 1-2
[4] Id.
[5] Id.

every negative way possible."[6]  Friends and family from the Bronx and Yemen confirm Dr. Al-silwi and Mohammad Saleh's accounts of the devastation this case has brought to the entire Saleh family.[7]

**B. "Please Hear My Words of Pain"**

During a visit to Yemen in 1998, Hisham Saleh married the love of his life, Talah M. Atawalah.  The couple had been close friends since childhood. ("PSR" ¶ 79)  Their marriage has been blessed with four young children: eight-year old Mousa Nag; four-year old Haroon Nagi; two-year old Mufadhla Saleh; and 11-month old Khadlija Saleh. ("PSR" ¶ 80)

Two and a half years ago, Mr. Saleh moved his family from Yemen to the Bronx.  The family lives in a modest, two bedroom apartment located on Walton Avenue in the South Bronx. ("PSR" ¶ 81)  Talah M. Atawalah cares for the children at home while Mr. Saleh works as a manager of "Sams Deli" in the Bronx.

When interviewed by the Probation Department Mrs. Atawalah found Mr. Saleh to be "an excellent husband and father and expressed her unwavering support for him." ("PSR" ¶ 80, 93)  However, she also expressed a tremendous

---

[6] EXHIBIT "C"
[7] EXHIBIT "E" 1-15

fear of what the future will bring for her and the children if Mr. Saleh is incarcerated. ("PSR" ¶ 80, 93) Mohammad Saleh recently observed, that Mrs. Atawalah "looked like the shadow of her former once happy self." ("PSR" ¶ 76) Mr. Saleh's sister, Jennifer, recognized that the grave reality of the circumstances are "… without my brother his wife stays alone with four lovely kids."[8]

The most disturbing account of 26 year-old Talah M. Atawalah's suffering are in her own words:

> … My husband and I are very sorry for what has happened. I must say that without my husband I will be lost. He is everything to me and our kids. My kids are so sad and confused because they know their father has never been in any trouble before. With gods help and your decision hope all goes well.  My husband has always been a good man and besides this one accident I still consider him a good man. He doesn't belong away from his family with out him there is no me. Please hear my words of pain, my husband deserves a second chance he is a good man. I can't stop thinking that one day he just not be here with me, and it kills me inside. Thank you so much for listening to me.[9]

Talah M. Atawalah's fear is based upon the fact that incarcerating Mr. Saleh will remove a loving and caring father from her children and deprive them of their only means of support.  ("PSR" ¶ 82)

No doubt, Mr. Saleh works seven days per week, from seven in the morning until six in the evening, earning $600

---

[8] Exhibit "B" 5-6
[9] Exhibit "A" 1

per week to support his wife and children. ("PSR" ¶ 80, 93)[10]  Dr. Al-silwi and many others advise that Mr. Saleh is the sole financial provider for the children.[11] Furthermore, "[y]ou could always see in his eyes the fact that he wanted to always to be the difference in his own children's lives."[12]  To be sure, the letters from Mr. Saleh's friends and neighbors in the Bronx, show he makes that difference every day in his children's lives.[13]

In addition, Mr. Saleh's eight year-old son, Mousa Naji, has suffered from a serious eye condition that required 17 visits to the Jacobi Medical Center Eye Clinic over the past two years. During his treatment, Mousa Naji has "often been accompanied by his father" … [who] "appears to me to be a good parent who is involved in his son's treatment and cares deeply about his son's well-being."[14] The "PSR" also noted that Mr. Saleh has also taken his son to Egypt to find a cure. ("PSR" ¶ 83)

<u>**OFFENSE CONDUCT**</u>

**C. The Instant Case**

On May 24, 2007 Mr. Saleh was arrested by ATF agents in the Bronx for violations arising under 18 U.S.C. 922 (a)

---

[10] Exhibit "B" 3
[11] Exhibits "C"
[12] EXHIBIT "E" 15
[13] EXHIBIT "E"
[14] EXHIBIT "D"

(1) (a). After his arraignment in the Southern District, his family posted a cash bail, signed an appearance bond and he was released subject to pre-trial conditions. Later, a grand jury sitting in the Southern District handed up an indictment charging Mr. Saleh, in Three Counts, with violations of 18 U.S.C. 922 (a) (1) (a); 26 U.S.C. 5861 (d) 18 U.S.C. 922 (k) and, inter alia , 21 U.S.C. 846. Thereafter, he was arraigned before United States Magistrate Judge Fox who released him subject to the May 24, 2007 bail conditions.  Following extensive discovery and plea negotiations with the Government, the charges contained in the Indictment were reduced and Hisham Saleh agreed to plead guilty to a Superceding Felony Information charging violations of 18 U.S.C. 922 (a) (1) (a); 26 U.S.C. 5861 (d); and 21 U.S.C. 846. (Information)[15]

As noted in the "PSR," the charged offenses involved the sale of firearms to a confidential informant from September 2006 through March 2007. The offenses also included a single sale of 48 grams of crack cocaine to the confidential informant and a sale of 27.3 grams of cocaine to the confidential informant. ("PSR" ¶¶ 10-30)  The relevant conduct in this case also demonstrates that there

---

[15] S1 07 Cr. 727 (HB)

were no firearms involved in the charged narcotics conspiracy. (Id.)

### D. 2007 Plea Agreement

In accordance with the 2007 plea agreement, Hisham Saleh pled guilty to a Superceding Information with an understanding that nothing in the agreement precluded him from moving for a non-Guidelines sentence under United States v. Booker. According the 2007 Plea Agreement, the Guidelines Offense Level was 24 and was based on a Criminal History Category of Level I. The Total Offense Level of 24 included the following adjustments:

- The guidelines Manual in effect as of November 1, 2007 applies to the offense conduct

**Count One**

- The sentencing guideline applicable to the offense charged in Count One of the Superceding Information is U.S.S.G. § 2K2.1. Under U.S.S.G. § 2K2.1 (a) (7), the base level offense is 12.

- Under U.S.S.G. § 2K2.1 (b) (1) (B), there was a 4 level increase because the offense involved between 8 and 24 firearms.

- Under U.S.S.G. § 2K2.1 (b) (5), there was a 4 level increase because the offense involved the trafficking of firearms.

- The total offense level for Count One is 20.

**Count Two**

- The sentencing guideline applicable to the offense charged in Count Two of the Superceding Information

is U.S.S.G. § 2K2.1. Under U.S.S.G. § 2K2.1 (a) (5), because the offense involved a firearm described in 26 U.S.C. § 5845 (a) the base level offense is 18.

- The total offense level for Count Two is 18.

- Under U.S.S.G. § 3D1.2. (b), Counts One and Two were grouped together. Accordingly, under U.S.S.G. § 3D1.3. (a), the combined offense level for Counts One and Two was 20.

**Count Three**

- The sentencing guideline applicable to the offense charged in Count Three of the Superceding Information is U.S.S.G. § 2D1.1 (a) (3). Under U.S.S.G. § 2D1.1. (c) Application Note 10 (D), because the defendant conspired to distribute and possess with intent to distribute 48 grams of crack cocaine, and 27.3 grams of cocaine, the base level is determined by first determining the base offense level for the quantity of cocaine base involved in the offense.

  **(a)** Under U.S.S.G. § 2D1.1. (c) (6), because the amount of crack cocaine was 48 grams, the base level offense is 28. According to U.S.S.G. § 2D1.1 (c) (6) Application note 10 (D)(II), the 48 grams of crack cocaine, at level 28, convert to 11.4 kg of marihuana per gram of cocaine base, for a total of 547, 200 grams of marihuana.

  **(b)** Under U.S.S.G. § 2D1.1. (c) (6), Application Note 10 (B), and the accompanying conversion table found at U.S.S.G. § 2D1.1 (c) Application Note 10 (E), the 27.3 grams of cocaine convert to 5,460 grams of marihuana.

  **(c)** The combined offense level for the 48 grams of crack cocaine and the 27.3 grams of cocaine is 552,660 grams of marihuana.

  **(d**) Under U.S.S.G. § 2D1.1. (c) (6), because the offense involved at least 400 kilograms of marihuana but less than 700 kilograms of marihuana, the base offense level is 28.

- According to U.S.S.G. § 2D1.1 (b) (9), because the defendant meets the criteria in subdivisions (1) – (5) of subsection (a) of U.S.S.G. § 5C1.2, the base offense is decreased by 2 levels.

- The total offense level for Count Three is 26.

- Under U.S.S.G. § 3D1.2, Count Three was not grouped together with the group that comprises counts One and Two.

**Combined Offense Level**

- Under U.S.S.G. § 3D1.4, because Counts One and Two have a combined offense level of 26, the combined total offense level for Counts one, Two, and Three is 27.

- Because the defendant clearly demonstrated acceptance of responsibility, a 2-level reduction will be warranted, under U.S.S.G. § 3 E1.1 (a). Furthermore, under U.S.S.G. § 3 E1.1 (b), an additional 1-level reduction is warranted because the defendant gave timely notice of his intention to plead guilty.

**Sentencing Range**

Based upon the forgoing calculations, Mr. Saleh's sentencing range is 51-63 months' of imprisonment. Under 21 U.S.C. § 841 (b) (1) (1) a statutory mandatory minimum term of 60 months imprisonment is required. However, according to the Plea Agreement, Mr. Saleh satisfies the conditions set fourth in 18 U.S.C. 3553 (f) for relief from the statutory mandatory minimum sentence. Accordingly, the Government will take the position at sentencing that the statutory mandatory minimum sentence does not apply, and that the Sentencing Guideline Range is therefore, 51 to 63 months' of imprisonment.

The parties also agreed that neither a downward nor an upward departure from the forgoing Stipulated Guideline Range is warranted. However, the parties agreed that

either party may seek a sentence outside the Stipulated
Guideline Range, based upon the factors found in 18
U.S.C. 3553 (a).

(PLEA AGREEMENT pp. 2-5)[16]

### E. 2007 Pre-Sentence Report (PSR)

The advisory Guideline calculations contained in the
Department of Probations 2007 Pre-Sentence Report are the
same as the Guideline calculations contained in the Plea
Agreement.  According to the 2007 "PSR," the Total Adjusted
Offense Level is 24, and was based on a Criminal History
Category of Level I.  ("PSR" ¶¶ 33-69)  Most importantly,
the "PSR" also found that under U.S.S.G. § 2D1.1 (b) (9),
Hisham Saleh met the requirements of subdivisions (1)-(5)
of subsection (a) of U.S.S.G. § 5C1.2.  Accordingly, the
base offense involving Count Three was decreased by 2
levels. ("PSR" ¶ 51)

### F. Objections to the 2007 Pre Sentence Report (PSR)

Hisham Saleh does not object to the Guideline
calculations contained in the "PSR."  Although the "PSR"
recommends that Mr. Saleh should be sentenced at the high
end of the estimated Guideline range, its reasoning that
"the unfortunate and unfair price that is paid by families
that are supported by defendant's who make horrible

---

[16] "PLEA AGREEMENT"; 07 Cr. 727 (HB)

choices" does not reflect a true consideration of the §
3553 (a) factors.  ("PSR" p. 25)  Furthermore, its
reasoning is, at times, based upon speculation not facts.
(Id.)  For instance, "we shutter to think at what might
have happened had these weapons been circulated among the
drug dealers and users of the community."  However, the
"PSR" points out the weapons never reached the community.
(Id.)

**ARGUMENT**

**A GUIDELINE SENTENCE OF 51 TO 63 MONTHS OF IMPRISONMENT IS
"GREATER THAN NECESSARY" TO SATISFY THE FACTORS CONTAINED
IN 18 U.S.C. § 3553 (A); ACCORDINGLY, THIS COURT SHOULD
IMPOSE A NON-GUIDELINES SENTENCE UNDER BOOKER, KIMBROUGH
CROSBY, AND 18 U.S.C. 3553 (a)**

**A. Legal Standard**

The Supreme Court's decision in Booker radically
changed the sentencing regime that has existed since the
Guidelines became effective on November 1, 1987. United
States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d
621 (2005).  In the "remedial opinion," Justice Breyer
found that the appropriate remedy for the Constitutional
violation needed to implement the substantive opinion, was
"[s]everance and excision…" with respect to two provisions
of the ("SRA").  Id. at 764.  The two invalidated
provisions, 18 U.S.C. § 3553 (b) (1) and 18 U.S.C. § 3742

(e), had mandated use of the Guidelines in sentencing and dealt with the standard of review of sentences on appeal, respectively. <u>Id</u>. Once the Court in <u>Booker</u> invalidated those provisions, the Sentencing Guidelines were no longer binding on district court judges. "So modified, the… Sentencing Reform Act of 1984… makes the Guidelines effectively advisory, [and]… requires a sentencing court to consider Guidelines ranges, … but it permits the court to tailor the sentence in light of other statutory concerns as well…" <u>Id</u>. at 749. Hence, the Federal Sentencing Guidelines are no longer "mandatory," but rather are now "effectively advisory." <u>Id</u>.

According to <u>Booker</u>, the controlling statutory provision in sentencing is not the "advisory Guidelines" but instead, <u>18 U.S.C. § 3553</u> (a), which provides:

> The court, in determining the particular sentence to be imposed, shall consider - -
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed - -
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and

17

(D) to provide the defendant with needed
    educational or vocational training, medical
    care, or other correctional treatment in the
    most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing
    range established for--

(A) the applicable category of offense committed
    by the applicable category of defendant as
    set forth in the Guidelines ...

(5) any pertinent policy statement--

(A) issued by the Sentencing Commission ...

(6) the need to avoid unwarranted sentence
    disparities among defendants with similar
    records who have been found guilty of similar
    conduct; and

(7) the need to provide restitution to any
    victims of the offense.

## B. Application

### 1. The History and Characteristics of the Defendant

The history and character of Hisham Saleh call for
leniency and mercy; therefore, the Court should impose a
non-Guideline sentence of probation. The "individualized
consideration" that he is entitled to receive at
sentencing, United States v. Crosby, 397 F.3d 103,114 (2d
Cir. 2005) (discussing the importance of providing
defendants with sentences achieving "individualized
justice"), demonstrate that his history and character

should dominate the Court's reasoning when imposing his sentence.  Mr. Saleh's extraordinary family circumstances, solid employment record, contributions to family and community and lack of criminal history all mitigate in favor of a non-Guidelines sentence. After all, Mr. Saleh's life was law-abiding and characterized by hard work for many years prior to committing the charged offenses.

The simple and moving letters of his family and friends, provided to the Court and by those who still love and support Hisham Saleh need not be reiterated here to demonstrate why he deserves a second chance.[17]  Certainly, Hisham Saleh has remained a decent person, far from a remorseless criminal deserving of further incarceration. Therefore, is just and fair that his sentence reflects that.  The Court should also consider, as demonstrated above, that a Guideline sentence of imprisonment from 51 to 63 months that is "greater than necessary" will certainly devastate his innocent wife and young children. Suffice it to say that numerous friends and family have pleaded for mercy on behalf of Hisham Saleh based upon his love and dedication to them, and the need that his family and friends have for him in their lives.

---

[17]    EXHIBITS "A"-"E"

Undeniably, a sentence of probation would provide assurance to his wife and children that their only source of financial support would not be removed from them. Conversely, a 51 to 63 months term of incarceration will afford no hope and rough justice to a young man who despite his mistakes has demonstrated an ability to love and provide for his young family and help others. Common sense urges the Court to consider that the immediate emotional and financial needs of his wife and children will not be adequately addressed during any a sentence of imprisonment, much less a sentence of 51 to 63 months.

Further, under § 3553(a)(1) and (a)(2)(C), the Court should acknowledge Mr. Saleh young age. United States v. Collins, 2007 WL 1723718 (S.D.N.Y.)(Finding a non-Guidelines sentence was warranted based, in part, upon defendant's age); United States v. Turpin, 475 F.3d 71, 75 n. 5 (2d Cir.2007) ("[W]e assume without deciding that [defendant's] age and family needs are proper considerations under section 3553(a)(1)."); United States v. Ruiz, No. 04 Cr. 1146-03(RWS), 2006 WL 1311982, at *4 (S.D.N.Y. May 10, 2006) (declining to impose a Guidelines sentence based on age in consideration of § 3553(a)(2)(C). For all these reasons, a companionate consideration of

Hisham Saleh's history and character support non-Guidelines sentence.

### 2. The Nature and Circumstances of the Offense

The nature and circumstance of this offense should include serious consideration of the unique facts underlying this prosecution. From the time of his arrest until today, Mr. Saleh has committed no intervening criminal activity. The crimes to which Mr. Saleh pled guilty in November 2007 were non-violent offenses. He has no criminal history. The offense did not involve serious bodily injury or death. There are no allegations that he discharged a firearm, or otherwise brandished a firearm. The offense conduct represents a single criminal occurrence that was committed without significant planning; was of limited duration; and represents a marked deviation by Mr. Saleh from an otherwise law-abiding life. The "advisory" Guideline estimates contained in the Plea Agreement and the "PSR" are the same.  For instance, both the Government and the Department of Probation have found that Mr. Saleh meets the criteria for the imposition of a sentence without regard to any statutory minimum sentence. Further, Mr. Saleh has accepted responsibility for his actions and by all accounts has expressed heartfelt remorse. In sum, a genuine consideration of the true nature and circumstances

of the offense cannot but leave one with the sense that a
51 to 63 month term of incarceration would be "greater than
necessary" to satisfy the § 3553 (a) factors as interpreted
in Booker.  Therefore, the only just and fair sentence
under Booker will credit the forgoing facts and
circumstances.

### 3. Deterrence, Just Punishment, Respect for the Law, and Protecting the Public

Section 3553 (a) (2) contains four sub-parts that
require consideration of the severity of the offense,
respect for the law, punishment, deterrence, the need to
protect the public, and the need to rehabilitate the
defendant.  18 U.S.C. § 3553(a) (2) (A)-(D). Here, the
analysis of § 3553(a) (2) factors should focus upon the
need to reflect the severity of the offense, promote
respect for the law, punish and deter others from such
conduct

The destruction of Hisham Saleh's young life, and the
devastation this matter has wrought upon his family, have
been and will continue to be more than sufficient to
reflect the severity of this offense, provide just
punishment and deterrence, and promote respect for the law.
18 U.S.C. § 3553 (a) (2).  For the reasons set forth below,

each of those considerations will be served by a non-Guidelines sentence.

First, he has already been punished when he was briefly imprisoned in connection with this case. Since he was released on bail in May 2007, the majority of his time has been spent under pretrial conditions. Even under a reasonable non-Guidelines sentence, Mr. Saleh faces life as a convicted felon and a stiff period of probation. Further, this prosecution has damaged his reputation; he is now a convicted felon and forever will be stained by this prosecution and conviction. Moreover, many individuals who frequented the East Tremont "Deli" know that the criminal activity that took place there has been destroyed and will, to the extent that they can possibly be guided by this prosecution, be deterred accordingly. 18 U.S.C. § 3553 (a) (2) (B). Certainly, having seen what Hisham Saleh has been through, they will consider the consequences of committing crimes.

Second, the conviction has punished Hisham Saleh by causing him to watch his family suffer. Indeed, unjust punishment, in contravention of 18 U.S.C. § 3553(a) (2) (A), is, respectfully, precisely what this Court would impose if, given the specific facts of this offense, it fails to account for the punishment that Hisham Saleh's

family have suffered.  And unjust punishment -- that is, an
"unreasonable" sentence, within the meaning of Booker, 125
S. Ct. at 744, would also result from a sentence based upon
the added emotional toll it would impose upon the Saleh
family.

Hisham Saleh accepted responsibility and demonstrated
true remorse for his conduct. The Court should, as it is
empowered to do, avoid imposing a sentence of imprisonment
and should permit him to begin the process of rebuilding
his life with a sentence of probation.

### 4.    Consulting the Advisory Guideline Factors

In Crosby, 397 F.3d 103, the Second Circuit began to
apply Booker.  The court in Crosby concluded that although
the mandatory aspect of the Guidelines was excised, the
Guidelines still warranted consideration.  So, under
Crosby, judges remain under a duty to "consider" the
Guidelines along with the other factors listed in 18 U.S.C.
3553 (a), but are under no duty to apply the Guidelines.
Id. at 111.  There is an exception to the rule that the
applicable sentence range be calculated.  Where the
sentencing judge, after considering all of the § 3553 (a)
factors makes a decision to impose a non-Guidelines
sentence (i.e., a sentence that is neither within the range
nor within the permissible departure authority)

irrespective of which range applies, "precise calculation
of the applicable Guideline range may not be necessary."
Id. at 112.  After "considering" the "advisory" Guidelines
and all of the § 3553 (a) factors detailed above, this
Court should avoid a "precise calculation of the applicable
Guideline range" and "fairly decide to impose a non-
Guidelines sentence."  Id.

    The Crosby decision declined to define "what degree of
consideration is required, or, to put it another way, what
weight the sentencing judge should normally give to the
applicable Guidelines range," preferring "to permit the
concept of consideration… to evolve as district judges
faithfully perform their statutory duties."  Crosby. 397
F.3d  at 113.  This Court should apply the same, if not
lesser weight, to the Guidelines in its overall § 3553(a)
analysis.  As explained by the Court of Appeals,
"[c]onsideration of the § 3553(a) factors is not a cut-and-
dried process of fact-finding and calculation; instead, a
district judge must contemplate the interplay among the
many facts in the record and the statutory guideposts."
United States v. Fernandez, 443 F.3d 19, 29 (2d Cir.2006).
In Rita v. United States, 127 S.Ct. 2456, 2465 (June 21,
2007), the Supreme Court found that a presumption of
reasonableness does not apply to a properly calculated

Guideline range in the district court. Further, "… in Gall, the Supreme Court ruled that no presumption of unreasonableness may be applied to sentences outside applicable Guidelines ranges." <u>United States. v. Verkhoglyad</u>, 2008 WL 383291 (2d Cir, 2008) (quoting <u>Gall</u>, 128 S.Ct. at 597).

Further, the Supreme Court has also specifically noted that in sentencing under the now-advisory guidelines, a sentencing court may take into account its view that the penalties for distributing crack are excessive in relation to those for other similar drugs. <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 564 (2007). Furthermore, "[i]n <u>Kimbrough</u>, the Supreme Court held in pertinent part that a district court can depart from the guidelines crack-quantity ratio if the court concludes that the guidelines ratio yields a sentence 'greater than necessary' to achieve the purposes of 18 U.S.C. § 3553(a)." <u>Primo v. United States</u>, 2008 WL 428449 (E.D.N.Y.) (quoting <u>Kimbrough</u>, 128 S.Ct. at 575.) As such, the Court is not prohibited from including in that consideration its own sense of what is a fair and just sentence under all the circumstances.

Judge Weinstein summed up this issue best: "The best policy considerations can be unnecessarily cruel when applied rigidly and without exception to individual human

beings ... Some [offenders] would be destroyed by a term in prison. There are defendants for whom prison incarceration makes no sense." Weinstein, *Prison Need Not Be Mandatory, There are Options Under the New U.S. Sentencing Guidelines.* 28 No. 1 Judge J. 16 (1989). Hisham Saleh is one such human being.

## Conclusion

Because the majority of Hisham Saleh's life awaits him in the future, he is particularly deserving of a meaningful chance at rehabilitation. Based upon all of the foregoing, Counsel respectfully requests that the Court impose a reasonable sentence of probation.

DATED: MARCH 10, 2008        RESPECTFULLY SUBMITTED,
BRONX, NEW YORK

_____
THOMAS J. SULLIVAN, ESQ.
930 GRAND CONCOURSE
BRONX, NEW YORK 10451
COUNSEL FOR HISHAM SALEH

27